UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 13-67-EBA

HAROLD EDWARD BARKER,                                                                       PLAINTIFF,

V.                  **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,                                                                 DEFENDANT.

On February 17, 2011, the Plaintiff, Harold Edward Barker, filed an application for Title II and Title XVI benefits, alleging that he became disabled on December 1, 2008. [Tr. 199, 201]. At the time of the alleged onset of his disability, Barker was fifty-one years of age, possessing a ninth grade education and a work history as a construction carpenter. In his application for benefits, he asserted that he became totally disabled on December 1, 2008, due to anxiety, arthritis of his total body, stomach problems and bipolar disorder. [TR. 219]. His claims were denied initially on April 25, 2011, and upon reconsideration on August 2, 2011. [Tr. 189]. He sought and was granted a hearing, where he appeared and testified before an Administrative Law Judge [ALJ] on September 25, 2011. [Tr. 189]. On November 9, 2012, the ALJ, applying the five step sequential evaluation process, denied his application for benefits and ruled that Barker was not disabled under the Social Security Act. [Tr. 189].

At step one of the sequential evaluation process, the ALJ determined that Barker had not engaged in substantial gainful activity since the alleged onset of his disability. At step two, the ALJ found Barker to have the following severe impairments: mild degenerative disc disease of the cervical/thoracic/lumbar spine; mild osteoarthritis in multiple joints; obesity; depressive

disorder; generalized anxiety disorder; and personality disorder.  In addition, the ALJ determined that Barker suffered from non severe impairments in his hands and stomach. [TR. 20].   At step three, the ALJ determined that Barker does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Considering the evidence before him, the ALJ found that Barker had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except frequently climb ramps/stairs, stoop, balance, kneel, crouch and crawl; occasionally climb ladders/ropes/scaffolds; frequently handle, finger, and feel with both upper extremities; and avoid concentrated exposure to excessive vibration.  In addition, the ALJ found that Barker can understand, remember, and carry out simple instructions, occasionally interact with the public, co-workers, and supervisors. [TR. 24].   In light of this residual functional capacity, at step four of the sequential evaluation process, the ALJ found that Barker was unable to perform any of his past relevant work as a as a construction carpenter as the work was heavy and skilled. [TR. 27]. Finally, at the fifth and final step of the sequential evaluation process, the ALJ asked vocational expert, Leah P. Salyers, whether jobs exist in the national economy for an individual with Barker's age, education, work experience, and residual functional capacity.  The expert testified that given these factors, the hypothetical individual would be able to perform the requirements of medium, light and sedentary representative occupations. [TR. 28].  Examples of work at the medium level of exertion included kitchen helper, cleaner/janitor, and laundry worker. [TR. 28].  Examples of work at the light level of exertion included product packager, cleaning positions, and laundry worker. [TR. 28].  Finally, examples of work at the sedentary level of exertion included machine monitor, bench worker/hand finisher, and product grader/sorter/selector.  [TR. 28].  The ALJ found that

jobs in these categories existed in significant numbers in the national economy and denied his claim for benefits, finding that Barker was "not disabled". [TR. 29]. Following the adverse decision by the ALJ, Barker pursued an appeal to the Appeals Counsel, which denied his request for review. As a result, Barker filed the complaint in this action seeking review of the ALJ's decision denying benefits. [R. 1]. He and the Defendant now seek summary judgment, and the matter is ripe for review. For the reasons stated more fully below Barker's Motion for Summary Judgment [R. 10] will be DENIED, and the Defendant's Motion for Summary Judgment [R. 11] will be GRANTED.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." Longworth v. Comm'r Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001)(quoting Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must be upheld if it is supported by substantial evidence. Foster, 279 F.3d at 353.

## ANALYSIS

In this action, the Plaintiff seeks an order reversing the Commissioner's decision and

remanding the action for an award of benefits.[R. 1]. In support of this demand for relief, he alleges that the ALJ committed the following errors: (1) failed to consider Mr. Barker's hand pain to be a severe impairment; (2) erred in failing to consider all of Barker's impairments when determining his residual functional capacity and formulating a hypothetical question for the vocational expert; (3) erred in failing to consider all of the state agency physicians' reports, but instead relied on only portions; and (4) erred in finding Barker to be capable of work at the medium level of exertion when no medical source supported this finding. However, for the reasons that follow, Barker does not justify the relief he requests, and his motion for summary judgment will be denied.

**I.     Did the ALJ err in finding that Barker's hand problems were not a severe impairment?**

Barker contends that at step two of the sequential evaluation process, the ALJ erred in failing to find that his hand problems were not sufficient to meet the criteria of a severe impairment. [R. 10]. It is notable that Barker provides this Court with no authority for this point of contention, and for the reasons that follow the Court will deny Barker any relief based on this claim.

Barker argues that medical evidence overwhelmingly supports the finding that his hand problems caused more than minimal abnormalities, and should have been considered severe. [R. 10]. However, an ALJ does not commit reversible error simply by finding an impairment to be non-severe where other impairments are found to be severe. This is because an ALJ may still consider non-severe impairments when determining a claimant's residual functional capacity and therefore his ability to engage in substantial gainful activity. As stated in Mazairz v. Sec'y

Health & Human Serv., 837 F.2d 240, 244 (6th Cir. 1987), "[s]ince the Secretary properly could consider claimant's [non-severe cervical impairment] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error." Therefore, as the ALJ found Barker to have the severe impairments of mild degenerative disc disease, mild osteoarthritis in multiple joints, obesity, depressive disorder, anxiety disorder, and personality disorder, he did not commit reversible error in failing to find Barker's hand problems to be severe. As stated above, the ALJ may still consider what he believes are non-severe impairments in determining a claimant's residual functional capacity and therefore the claimant's ability to engage in substantial gainful activity. See also McGlothlin v. Comm'r, 299 F.App'x 516, 522 (6th Cir. 2008)(finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

Therefore, the ALJ did not commit error in failing to find that Barker's hand problems were not severe impairments, and Barker's argument to the contrary is without merit.

**II. Did the ALJ err in failing to consider all of Barker's impairments when determining his residual functional capacity?**

Barker contends that the ALJ erred in failing to consider all of his impairments when determining his residual functional capacity, specifically his hand problems, hypertension, hypothyroidism, and limitations in his concentration, persistence, and pace. At the hearing level an ALJ is responsible for determining the claimant's RFC, See 20 C.F.R. §§ 404.1564(c),

5

416.946(c); Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004), an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d0(2). In addition, an ALJ is free to discount a claimant's subjective descriptions of his symptoms where they are not consistent with the objective evidence of record. 42 U.S.C. 423(d)(5)(A);Varley v. Secretary of health and Human Services, 820 F.2d 777, 780 (6th Cir. 1987). Moreover, "since the A.L.J. had the opportunity to observe the demeanor of [plaintiff], his conclusions with respect to credibility 'should not be discarded lightly.'" Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984) (quoting Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978)). A review of the record in this case reveals that the ALJ did not fail to consider Barker's impairments and incorporate then into a proper residual functional capacity. Therefore, Barker is not entitled to summary judgment on this claim.

In relation to Barker's hand problems, he contends that the ALJ failed to adequately describe the limitations attributable to his hand problems, and therefore presented inadequate limitations to the vocational expert in the hypothetical question. As a result, Barker contends that the ALJ committed a "harmful error." [R. 10]. In addition to the obvious deformities of Barker's hands revealed upon simple viewing, Barker contends that the medical evidence from the Sandy Hook Family Care Center documented that he was positive for chronic wrist pain with cysts on both wrists. [R. 10]. The records noted tenderness, swelling and deformity on examination. [R. 10].

Barker relates "lumps on both wrists" in a Disability Report - Appeal- Form SSA-3441, although he does not explain any symptoms or limitations due to wrist or hand problems. [TR. 258-59]. However, during the hearing before the ALJ on September 25, 2012, Barker testified:

Q. Now let's talk about your hands. You're wearing a brace on your right hand

today.  Tell me why you're having to wear the brace.

A.  Because I have knots on my arms, or on my wrists, and they burst.  It feels like you're shoveling a hot needle through the back of my thumbs.

Q.  Okay, and how long have you had problems with your thumb to where you're having to wear that?

A.  Probably the last three or four years.

Q.  Has it gotten worse?

A.  Yes.

Q.  As time's gon on?

A. It's got real bad.

Q.  Okay, and it looks like you've got some knots on your fingers.

A. Yes.

Q.  How long have you had these knots on your fingers?

A.  Arthritis; that's been coming on for the last eight to 10 years.

Q.  Okay, and has that gotten worse in the last two or three years?

A.  Yes.

Q.  Now do you have a problem making fists with your hands?  Does it hurt?

A.  Most of the time.

Q.  Now does daily activities that I or you, either one, would do on a normal basis, have you noticed difficulty in using your hands?

A.  Yes, it's hard to even shave anymore.

Q.  Okay, and are you left or right-handed?

A. I'm right-handed.

Q.  Now is your left hand worse than your right, the left one –

7

> A. It's a little bit.
>
> Q. Okay; and where does the pain start in your left hand and where does it run?
>
> A. Well, right at the base of the thumb all the way down the middle of my hand.
>
> Q. Okay; and where do you have the pain in your right hand?
>
> A. The same way.
>
> Q. The same way?
>
> A. Because I have knots on both hands.

[TR. 44-45].

In the present case, the ALJ addressed Barker's hand symptoms by stating:

> The claimant made complaints of stomach problems when filing his application. He also reported problems with his hands. The claimant did report pain in his hands in February 2011 due to long history of carpentry work and manual work, as well as intermittent abdominal pain exacerbated by drinking alcohol. He has tried nothing for his symptoms (Exhibit 8F). He did not report any impairments with his hands or stomach on consultative exam in March 2011, and the examiner found his grip strength was 5/5 with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally (Exhibit 6F, pg. 3). More recent treatment notes show he has denied abdominal pain; has made no further complaints of hand pain; and has received no further treatment. As such, I find his hand and stomach condition is not severe.

[TR. 22].

The record supports the ALJ's statements above. In February, 2011, Barker was noted to be positive for wrist pain, tenderness swelling and cysts on both wrists. [Tr. 369-71]. However, diagnostic images from that time revealed only minimal degenerative changes in his wrists and hands. [TR. 21, 326-27]. In addition, Barker sought no treatment for this and never subsequently complained of hand pain to his treating sources or to Charles Laney, M.D., a consultative examiner. [TR. 22, 25]. During consultative examination, he was found to have the ability to lift

8

and carry objects without limitation. [TR. 352]. Therefore, the objective evidence in the record supports the ALJ's conclusion that the asserted hand pain resulted in no limitations in his physical abilities, and properly supports the ALJ's residual functional capacity, where the ALJ found Barker capable of frequently climbing ramps/stairs...occasionally climb ladders/ropes/scaffolds; frequently handle, finger and feel with both upper extremities. The ALJ committed no error in articulating limitations resulting from Barker's complained hand problems.

Next, Barker contends that the ALJ failed to mention his hypertension and hypothyroidism, though they impact his ability to perform work activities. [R. 10]. In support, Barker argues that in March and June, 2011, he was treated for high blood pressure and underactive thyroid, and that he was positive for fatigue and weakness. [R. 10]. In addition, in February, 2012, his blood pressure was elevated and he was diagnosed with hypertension. He related associated symptoms of hypertension such as headaches and malaise and fatigue. [R. 10]. However, the record in the action does not show that Barker alleged limitations arising from these conditions, [TR. 42-52, 219, 258-59], and as a result, the ALJ had no duty to consider the limiting effects of these conditions. See Lowes v. Comm'r of Soc. Sec., No. 12-13077, 2013 U.S. Dist. LEXIS 115289, at *21, 2013 WL 4413751 (E.D. Mich. August 15, 2013).

Finally, in relation to any mental restrictions, Barker of course contends that the ALJ limited him to moderate difficulties in concentration, persistence or pace, but failed to include these same restrictions in the hypothetical question that was presented to the vocational expert. However, as correctly noted by the Commissioner, the Plaintiff's argument ignores the ALJ's finding that Barker could only occasionally interact with the public, co-workers, and supervisors, and, as stated by Dr. Lima "is not likely to do well with supervisors and co-workers. His ability

9

to manage stressors typically found at work is reduced." [TR. 348].

Based upon the record, the ALJ, in his residual functional capacity, found that Barker could understand, remember, and carry out simple instructions and only occasionally interact with the public, co-workers, and supervisors. [TR. 24-26]. In reaching this conclusion, the ALJ commented upon the evidence tendered by Dr. Stodola, Ph.D., and Dan Vandivier, Ph.D., state agency medical experts, indicating that Barker retains the ability to understand/remember/carry-out simple tasks in an object-focused setting; sustain attention/concentration for two-hour segments in an eight-hour workday; interact appropriately with supervisors and co-workers on an infrequent basis and no more than occasional contact with the public; and adapt appropriately to day-to-day pressures and respond as needed. [TR. 26]. Further the ALJ commented on the fact that Pathways did not provide a mental functional capacity assessment, but that Dr. Lima, a consultative examiner, found that Barker is able to understand instructions and will not have trouble recalling those instructions; be able to complete tasks in a normal amount of time, but is not likely to do well with supervisors/co-workers; and his ability to manage stressors typically found at work is reduced. [TR. 26]. As a result, the ALJ stated that he gave considerable weight to these opinions and found Barker to be able to understand, remember, and carry out simple instructions and can occasionally interact with the public, co-workers, and supervisors. [Tr. 26]. Therefore, the RFC in fact addresses Barker's "mental restrictions" and is clearly supported by substantial evidence of record articulated by the ALJ and recounted here. [Tr. 53].

Barker's arguments that the ALJ failed to consider all of his impairments when determining his residual functional capacity, specifically his hand problems, hypertension, hypothyroidism, and limitations in his concentration, persistence, and pace are without merit and contrary to the record. Therefore, Barker is not entitled to summary judgment on this claim.

**III. Did the ALJ commit error by failing to consider all of the state agency physicians' reports, rather than merely "bits and pieces" in formulating the hypothetical question asked of the vocational expert?**

Barker contends that in formulating a hypothetical question for the vocational expert, the ALJ chose to ignore an opinion by Dr. Lima, wherein that physician concluded that Barker is not likely to do well with supervisors and co-workers and his ability manage stressors typically found at work is reduced. [R. 10, citing TR. 347-48]. However, as stated above, the ALJ, in his residual functional capacity, found that Barker could understand, remember, and carry out simple instructions and *only occasionally interact with the public, co-workers, and supervisors*. [TR. 24-26]. It was Dr. Lima's opinion that Barker was able to understand simple instructions without difficulty, concentrate well, complete tasks at a normal pace, but was not likely to do well with supervisors or co-workers; and had reduced ability to deal with pressures and stressors [Tr. 347-48]. As stated above, an ALJ is responsible for determining the claimant's RFC, See 20 C.F.R. §§ 404.1564(c), 416.946(c); Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004), which is an issue reserved for the Commissioner.20 C.F.R. § 404.1527(d)(2). The Commissioner correctly notes that the ALJ considered Dr. Lima's consultative exam, finding that Barker was cooperative with coherent speech and logical thought processes [Tr. 345], fully oriented with intact memory [Tr. 345], possessed good abstract reasoning with normal social judgment [Tr 346], denied any history of poor relationships with supervisors or co-workers and reported no difficulties following rules at work [Tr. 23, 346]. The ALJ stated that he consequently gave Dr. Lima's opinion great weight [Tr. 26] and fully incorporated Dr. Lima's opinion when formulating an RFC. [Tr. 26].. As a result, Barker's claim that the ALJ selected

11

only bits and pieces of Dr. Lima's opinion is contradicted by the record. Therefore, Barker's claim for relief on this ground is without merit.

## IV. Did the ALJ commit error in finding Barker to be at a medium work level when no medical source supported this finding?

Finally, Barker argues that the ALJ, in finding that he was capable of medium work, did so without citation to any particular medical source to support that finding. In determining Barker's RFC, the ALJ referenced Dr. Laney's consultative exam. That physician found that Barker had a normal gait, was able to rise from a seated position without assistance, could stand on tiptoes and heels, and tandem walk without difficulty. [Tr. 351]. In addition, Barker had good muscle strength and tone, normal reflexes and sensation. [Tr. 352]. Dr. Laney stated that he believed Barker should "be able to sit, walk, and/or stand for a full workday, lift/carry objects without imitations, hold a conversation, respond appropriately to questions, carry out and remember instructions. [Tr. 26]. A review of the ALJ's opinion as it relates to Dr. Laney's opinion is instructive.

> As for the opinion evidence, the state agency medical consultant's [sic] did not find the claimant had a severe physical impairment (Exhibits 2A and 8A). Dr. Laney, examiner from Southern Medical Group, Inc., assessed he could sit, walk, and/or stand for a full workday; and lift/carry objects without limitations (Exhibit 6F). Sandy Hook Family Care Center/Grayson Family Care Center, his primary care provider did not provide a functional capacity assessment (Exhibits 8F, 9F, 12F, and 17F)**. In conclusion, I have given great weight to the consultative examiner and further find he is limited to medium level exertion** due to a current MRI of the lumbar spine in January 2012 showing persistent degenerative disc disease at L5-S1 and annular fissures without evidence of superimposed disc herniation or nerve root impingement (Exhibit 15F).

[Tr. 26](emphasis added).

Clearly, the ALJ considered Dr. Laney's opinion and properly chose to give it great weight. [Tr. 26]. Therefore, the ALJ's opinion finding that Barker was capable of work at the medium level of exertion is supported by substantial evidence, and Barker is entitled to no relief on this claim.

## CONCLUSION

Therefore, for the foregoing reasons, it is ORDERED that the Plaintiff's Motion for Summary Judgment [Record No. 10] be DENIED, the Defendant Commissioner's Motion for Summary Judgment [Record No. 11] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

This the 6th day of March, 2015.

Signed By:
Edward B. Atkins  EBA
United States Magistrate Judge